## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BRIAN C.,

               Plaintiff,

     v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

               Defendant.

Case No. 22 C 1447

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian C. seeks review of the final decision of the Acting Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). Brian requests reversal of the ALJ's decision and remand [12], and the Acting Commissioner moves for summary judgment affirming the decision [16]. For the following reasons, the Court affirms the ALJ's decision.

## BACKGROUND

Brian was 51 years old when he applied for DIB on June 11, 2019. He alleges disability since July 2, 2017[1] due to intercostal neuritis, anxiety, depression, migraine headaches, and degenerative disc disease of the thoracic and lumber spines. Brian has a history of surgeries to release his carpal and cubital tunnel at his right wrist, elbow, and left-hand ring finger. (R. 28). His treatment has also included counseling and various prescription medication. *Id*. at 29. Brian completed high school and one year of college courses in 2014. *Id*. at 233. He previously worked as a shop foreman, upholstery shop supervisor, and high-end custom upholstery and furniture builder. *Id*. at 60, 233.

---

[1] Brian, "through his attorney, requested amending the alleged onset date to July 2, 2017," from December 2, 2016. (R. 25).

Brian's claims were initially denied on January 31, 2020, and upon reconsideration on August 28, 2020. (R. 87-100, 102-18). Upon Brian's written request for a hearing, on January 28, 2021, the administrative law judge ("ALJ") held a telephone hearing. Brian and his attorney attended the hearing, and vocational expert ("VE") Melissa Hennessey testified. *Id*. at 52-86. On May 14, 2021, the ALJ found Brian not disabled. *Id*. at 24-46. The opinion followed the required five-step process. 20 C.F.R. § 404.1520. The ALJ concluded that Brian had the following severe impairments: degenerative disc disease and degenerative joint disease, thoracic and lumbar spines;[2] juvenile myoclonic epilepsy;[3] intercostal neuritis, left side, secondary to phenol neurolysis treatment, left intercostal nerve;[4] migraine headache; hypertension; and obesity. *Id*. at 28. The ALJ concluded that Brian does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 32. The ALJ specifically considered Listings 1.15-1.16, 2.02-2.04, 11.02, 11.04, 11.14, 14.09. *Id*. at 32-40. The ALJ also considered all of the listings in section 5.00 for digestive system disorders and 11.00 for neurological disorders. *Id*. at 36. Under the "Paragraph B" analysis, the ALJ found that Brian had no limitation in the functional area of understanding, remembering, or applying information and mild limitations in the other three functional areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *Id*. at

---

[2] Degenerative disk disease is "a condition in which a damaged [spinal] disc causes pain." *Charles S. v. Saul*, 2020 WL 489430, at *2 n.2 (S.D. Ill. Jan. 30, 2020) (citation omitted). Degenerative joint disease is "a form of arthritis characterized by degeneration of the bone and cartilage in the joint." *Alexander v. Astrue*, 2010 WL 3199356, at *1 n.3 (N.D. Ill. Aug. 10, 2010) (citation omitted).

[3] Juvenile myoclonic epilepsy is "an epilepsy syndrome typically beginning in early adolescence, and characterized by early morning myoclonic jerks that may progress into a generalized tonic-clonic seizure." STEDMANS MEDICAL DICTIONARY § 297900, Westlaw (database updated November 2014).

[4] Intercostal neuritis is an inflammation of a nerve between the ribs. *See Reitz v. Comm'r of Soc. Sec.*, 2010 WL 1997290, at *2 (W.D. Mich. Feb. 11, 2010).

30-32.

The ALJ then determined that Brian had the residual functional capacity ("RFC") to perform a reduced range of light work except he: (1) can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; (2) has no limitations in his ability to sit, stand, or walk throughout an 8-hour workday; (3) needs to alternate his position between sitting, standing, and walking for no more than five minutes out of every hour, and while doing so, he would not need to be off task; (4) can occasionally climb ramps and stairs; (5) can occasionally stoop, kneel, balance, crouch, and crawl, but he can never climb ladders, ropes, or scaffolds; (6) is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery; and (7) is further limited to simple, routine tasks. (R. 40, 44). The ALJ concluded that Brian is unable to perform his past relevant work, but there were jobs that existed in significant numbers in the national economy that Brian could perform, including storage rental clerk and marker. *Id.* at 44-46. As a result, the ALJ found Brian not disabled. *Id.* at 46. The Appeals Council denied Brian's request for review. *Id.* at 1-7.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt.

P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Brian raises three challenges to the ALJ's decision. Brian first argues that the ALJ violated 20 C.F.R. §404.1520c and failed to construct an "accurate and logical bridge" between the evidence and his conclusion that the opinion of Jessica Waters, PA-C ("PA Waters"), was not persuasive. Brian's second argument is that the ALJ's RFC assessment requires remand because it was based upon the ALJ's speculation and did not comply with Social Security Ruling ("SSR") 96-8p. Third, Brian contends that the ALJ violated SSR 16-3p in assessing his pain and the

third-party function report completed by his wife. The Court finds that the ALJ did not commit reversible error, and his decision is supported by more than a mere scintilla of evidence.

### A. Physician Assistant Medical Opinion

Brian first challenges the ALJ's evaluation of the medical opinion evidence from treating psychiatric care provider PA Waters. Brian argues that the ALJ erred because the ALJ's decision was internally inconsistent, unsupported, and failed to articulate any consideration of the evidence from other sources that was consistent with PA Waters' opinion. The Court disagrees.

In this case, the ALJ's evaluation of the medical opinion evidence was subject to regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Under the regulations, a licensed physician assistant acting within her licensed scope of practice is an acceptable medical source. 20 C.F.R. § 404.1502(a)(8). The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ need only articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that support or contradict a medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 404.1520c(a), (c). While an ALJ must explain how he considered the factors of supportability and consistency in his decision, he is not required to explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

In January 2021, PA Waters completed a Mental Impairment Questionnaire. (R. 1931-33). She checked the box next to the following signs and symptoms associated with Brian's diagnoses:

sleep disturbance, emotional lability, decreased energy, recurrent panic attacks (but not diagnostic of panic disorder or agoraphobia), difficulty thinking or concentrating, social withdrawal or isolation, feelings of guilt/worthlessness, generalized persistent anxiety, psychomotor agitation or retardation, and chronic pain exacerbates symptoms. *Id*. at 1931. PA Waters opined that Brian had tried and failed several medications, but his current medications were partially effective. *Id*. She also opined that Brian could perform simple tasks, had moderate limitations in concentration, persistence, or maintaining pace (would be off task 11-15% of the day), and had mild limitations in interacting with others and adapting or managing oneself. *Id*. at 1933.

The ALJ reviewed PA Waters' assessment and found it not persuasive. (R. 44). The ALJ explained that the symptoms PA Waters reported were not excessive and reflected symptoms and signs documented in her treatment notes. *Id*. The ALJ, however, pointed out that some of the symptoms PA Waters identified could be associated with Brian's physical impairments rather than psychological problems. *Id*. In addition, the ALJ concluded that the severity of functional limitations that PA Waters indicated were not supported by her own treatment notes. *Id*. For example, the ALJ stated that the mental examinations PA Waters conducted did not demonstrate an abnormality in Brian's presentation, except that he appeared anxious or glum. *Id*. As explained in more detail below, the ALJ supported his decision to find PA Waters' assessment not persuasive with substantial evidence.

1. **Internal Consistencies**

To start, the ALJ's opinion was not internally inconsistent. *See* Doc. 12 at 4-5 (*citing Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("[A]n internally inconsistent opinion by an ALJ is likely to fail to build a logical bridge between the evidence and the result.")). According to Brian, two of the ALJ's conclusions were internally inconsistent. First is the ALJ's conclusion

that the symptoms PA Waters reported were not excessive and reflected symptoms and signs in her treatment notes. (R. 44). Second is the ALJ's subsequent conclusion that the severity of functional limitations that PA Waters indicated was not supported by her own treatment notes. *Id.* But both conclusions may be true without being internally inconsistent. Indeed, the ALJ's first conclusion provides evidence that the ALJ considered PA Waters' treatment notes and Mental Impairment Questionnaire. There, the ALJ agreed that the non-excessive symptoms PA Waters reported in the questionnaire were consistent with her treatment notes. The second conclusion does not discount the ALJ's first conclusion. Rather, the second conclusion is the ALJ's determination that the severity of the limitations PA Waters selected in the questionnaire was at odds with her treatment notes. As a result, the ALJ agreed with the non-excessive symptoms PA Waters identified and disagreed with the dire limitations that PA Waters also selected.

Unlike in *Lothridge*, which Brian relies on, the ALJ here found PA Waters unpersuasive, explained his rationale for doing so, and then relied on other medical opinions to craft an RFC. The two other cases Brian relies on are also inapplicable. *See* Doc. 17 at 1-2. In *Carradine v. Barnhart*, the Seventh Circuit remanded the ALJ's discounting of the claimant's severe pain because it was psychological, not purely physical. 360 F.3d 751, 754 (7th Cir. 2004). The court found such reasoning logically flawed because pain is often psychological. *Id.* In this case, the ALJ did not discount Brian's pain for comparable reasons. In *Daquan S. v. Saul*, the court remanded due to internal inconsistency where the ALJ found one medical opinion not persuasive because it used a check-the-box form but found another medical opinion persuasive that also used a check-the-box form. 2021 WL 353999, at *5 (N.D. Ill. Feb. 2, 2021). Again, this type of logical inconsistency does not exist here. Ultimately, because both of the ALJ's conclusions can logically coexist, the Court does not recognize an internal inconsistency that could necessitate remand.

7

## 2. ALJ's Analysis was Supported by the Evidence

Brian also alleges that the ALJ's analysis of PA Waters' opinion failed to discuss the contents of her opinion at all, did not identify the specific limitations that were unsupported, is unsupported by the examples that the ALJ selected, and failed to consider all of the evidence in her treatment notes. *See* Doc. 12 at 5-7. The Court finds these additional arguments in response to the ALJ's substantive analysis unpersuasive. The Seventh Circuit has articulated the underlying principles that guide this Court's analysis in concluding that the ALJ's reasoning is sufficient. Notably, "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). In doing so, the Court reads "the ALJ's decision as a whole." *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (explaining "it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"). In addition, "an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Winkelman v. Saul*, 835 F. App'x 889, 891 (7th Cir. 2021) (ALJ "need not address in writing every shred of evidence.").

Contrary to Brian's arguments, this is not a case where the ALJ failed to discuss any of the contents of PA Waters' opinion. Instead, in discussing PA Waters' opinion, the ALJ identified discrepancies between the symptoms PA Waters selected in the questionnaire and her treatment notes. (R. 44). Additionally, the ALJ supported his conclusion with two examples. *Id*. First, the ALJ recognized that "social withdrawal or isolation," which PA Waters selected in the questionnaire, might have been attributable to Brian's physical problems identified in his Function Reports. *Id*. (*citing* R. 256, 302, 343). Second, the ALJ concluded that PA Waters' functional limitations were not supported, partly because the mental examinations she conducted did not

demonstrate an abnormality in Brian's presentation other than that he appeared anxious or glum. *Id*. (*citing* R. 1200-33, 2042-71). In this case, the ALJ discussed the contents of PA Waters' opinion, though he did not discuss it with the level of specificity that Brian would prefer. But such a level of specificity is not required. Instead, the ALJ minimally articulated his reasoning for finding PA Waters' opinion not persuasive. *See Rice*, 384 F.3d at 371 ("An ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.") (cleaned up); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (minimal articulation is "a very deferential standard that we have, in fact, deemed 'lax'"). That is all that is required.

In addition, Brian asks this Court to reweigh the evidence because he disagrees with the ALJ's evaluation with respect to his presentation during mental status examinations and the ALJ's conclusion that Brian's symptoms could be associated with his physical impairments. Doc. 12 at 5-7. Regarding Brian's presentation during his mental status examinations, the ALJ considered PA Waters' treatment notes and pointed out that PA Waters described Brian as appearing anxious or glum. (R. 44). Brian asserts that the ALJ was required to explain why these abnormalities did not reflect anxiety and depression. *See* Doc. 12 at 5. However, throughout the ALJ's opinion, the ALJ did consider PA Waters' treatment notes from 2017 to 2020 and Brian's history of depression and anxiety. (R. 29-30) (*citing* R. 1120-54, 1205, 1210-11, 2042-43, 2045). The ALJ then concluded that the record evidence "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore not severe." *Id*. at 29. The ALJ's opinion, in combination with the ALJ's review of PA Waters' questionnaire, demonstrates that the ALJ considered Brian's anxiety and depression and nevertheless found it to be non-severe. Because the ALJ spent two pages analyzing Brian's anxiety and depression as described in PA

Waters' treatment notes in step two, the ALJ was not required to repeat that analysis in step four when he evaluated the medical opinion evidence. *See Rice*, 384 F.3d at 370 n.5. Likewise, the Court will not reweigh the evidence the ALJ already considered. *See Reynolds*, 25 F.4th at 473.

Concerning the ALJ's conclusion about Brian's symptoms being attributable to his physical impairments, Brian alleges that the ALJ should have illustrated how his conclusion undermined PA Waters' opinion. *See* Doc. 12 at 6-7. Here, PA Waters checked the box for mild limitations in interacting with others. (R. 1933). The ALJ also considered the record evidence in evaluating Brian's ability to interact with others and determined that he had a mild limitation. *Id.* at 31. There, the ALJ considered that Brian was friendly during his appointments, reported decreased social activity because he feared such activity might cause his condition to worsen, denied having any problems getting along with family, friends, neighbors, other people, and authority figures, and was able to sit in a waiting area with strangers. *Id.* (citations omitted). Ultimately, the ALJ weighed the evidence of Brian's ability to interact with others at step two and accepted the same limitation that PA Waters provided. Moreover, the ALJ's weighing of the evidence is supported by the findings of the state agency psychological consultants (which the ALJ found persuasive) that maintained Brian had a mild limitation in his ability to interact with others. *Id*, at 93, 110. As such, the ALJ's decision is supported by substantial evidence, and the Court will not reweigh the evidence. *See Reynolds*, 25 F.4th at 473.

Brian further alleges that the ALJ did not consider other components of PA Waters' treatment notes. *See* Doc. 12 at 5. But the ALJ need not comment on every line of evidence in PA Waters' treatment notes. *See Denton*, 596 F.3d at 425; *Winkelman*, 835 F. App'x at 891. Here, PA Waters' treatment notes spanned nearly 60 pages. *See* (R. 1200-33, 2042-71). Throughout the ALJ's 22-page opinion, the ALJ discussed PA Waters' treatment notes and questionnaire and

demonstrated why he found PA Waters' opinion not persuasive. While an ALJ opinion could always include more detail, it was sufficient for the ALJ to recognize and respond to PA Waters' conclusions in the questionnaire. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("The ALJ's analysis could well have been better, but there is no basis to overturn her determination, especially under the deferential standard controlling our review.").

### 3. Consistency Regulation Factor

Finally, Brian asks this Court to find the ALJ erred because he did not consider other sources consistent with PA Waters' medical opinion. *See* Doc. 12 at 7. Pursuant to 20 C.F.R. § 404.1520c, an ALJ must explain how he considered the consistency factor. "The more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2). However, there is no requirement that the ALJ support his consistency analysis with evidence from every medical opinion in the record, as the ALJ need only minimally articulate the basis for his conclusions.

Here, Brian relies on evidence from his testimony and the treatment notes of his counselor, Shannon Hock, L.P.C., to support his critique of the ALJ's review. *See* Doc. 12 at 7 (citations omitted). But the ALJ's opinion demonstrates that the ALJ considered whether PA Waters' opinion was consistent with the record evidence, including the evidence Brian identified. For example, the ALJ compared PA Waters' opinion concerning Brian's social withdrawal or isolation with Brian's statements on his Function Reports. (R. 44) (*citing* R. 256, 302, 343). Thus, the ALJ did not ignore Brian's testimony.

Moreover, Brian's counselor's records were included in Portrait Health Centers ("PHC") of Buffalo Grove's response to a request for medical evidence. (R. 1120-31). The state agency

psychologist, Dr. David Voss, Ph.D., then reviewed those records for the reconsideration disability determination. *Id*. at 104, 108, 111. There, Dr. Voss evaluated PHC's report from August 2017 to July 2019, which included Brian's diagnosis of adjustment disorder with depressed mood and his counselor's notes from a July 2019 session. *Id*. at 108, 111. In the end, the ALJ found Dr. Voss' medical opinion persuasive and "agreed with [the] psychological consultants that the mental impairments for which the claimant was treated did not impose more than mild limitations on his functioning." *Id*. at 43. As such, the ALJ did consider the state agency psychologists' review of the evidence, which included Brian's counselor's treatment notes.[5] Accordingly, the Court finds that the ALJ did not err in his assessment of PA Waters' medical opinion.

## B. RFC Assessment

Brian next asserts two arguments related to the RFC. First, Brian claims that the ALJ improperly drafted the RFC and created an evidentiary deficit in doing so. Second, citing SSR 96-8p, Brian contends that the ALJ's selected limitations for the RFC differed from the medical opinion evidence in the record. *See* Doc. 12 at 7. The RFC is the "most physical and mental work the claimant can do on a sustained basis despite [his] limitations." *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). In reaching his RFC assessment, the ALJ must "articulate at some minimal level [his] analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Ultimately, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473.

---

[5] The cases Brian relies on where the ALJ failed to explain how he weighed the evidence or ignored an entire line of evidence are distinguishable because, here, the ALJ adequately weighed the evidence and supplied his reasoning in doing so. *See* Doc. 12 at7, Doc. 17 at 5 (*citing Ronald P. v. Kijakazi*, 2022 WL 832674, at *7 (N.D. Ill. Mar. 21, 2022) (remanding where it was not clear the ALJ reviewed newer evidence and missed conflicting evidence); *Farzad K. v. Kijakazi*, 2021 WL 4775297, at *4 (N.D. Ill. Oct. 13, 2021) (finding the ALJ ignored an entire line of evidence); *Virginia D. v. Kijakazi*, 2021 WL 4288185, at *3 (N.D. Ill. Sept. 21, 2021) (remanding where the ALJ relied on boilerplate statements and conclusions)).

### 1. ALJ Relied on Medical Opinion Evidence in Drafting RFC Limitations

Brian begins by claiming that the ALJ's RFC was not supported by substantial evidence because it was not based on any medical opinion in the record or Brian's testimony. *See* Doc. 12 at 7-8. An ALJ has the "final responsibility" for determining a claimant's RFC. *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). In general, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Indeed, Brian agreed that the "ALJ was not required to rely on any medical opinion or choose between them." Doc. 12 at 8 (*citing Schmidt*, 496 F.3d at 845). Yet Brian relied on the following statement from the ALJ: "I acknowledge that no doctor of record described these specific limitations, nor do they reflect the claimant's testimony. Instead, they reflect what I consider to be reasonable in light of all of the evidence in the record." *Id.* (*citing* R. 42).

Here, the ALJ did not err in including this statement in his opinion. Rather, by including this statement, the ALJ admitted that he reviewed the relevant record evidence. In doing so, the ALJ spent nearly twenty pages considering the evidence, evaluating the medical opinions, and crafting an RFC in light of the record before him. *See generally* (R. 25-36). Brian's assertion that the ALJ only focused on what was "reasonable" to him contradicts the ALJ's statement that he considered what was "reasonable in light of all of the evidence in the record." *See* Doc. 12 at 9. Accordingly, the ALJ supported his analysis with more than a mere scintilla of evidence. *See Zurawski*, 245 F.3d at 888.

Relatedly, Brian alleges that the ALJ discounted all of the medical opinions, created an evidentiary deficit, and connected the dots himself to craft Brian's RFC. *See* Doc. 12 at 8; Doc. 17 at 5-6. An evidentiary deficit is created when an ALJ rejects all opinion evidence, and the

remainder of the record does not support the limitations in the RFC. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). However, in this case, the ALJ's review of the medical opinion evidence demonstrates that the ALJ did not reject all opinion evidence. *See* (R. 43-44). Instead, the ALJ found the opinions of the state agency medical consultants somewhat persuasive. *Id.* at 43. The ALJ also found the opinions of the state psychological consultants persuasive. *Id.*[6] Therefore, the ALJ was not faced with an evidentiary deficit because the ALJ did not reject all opinion evidence.

## 2. RFC Limitations are Supported by Substantial Evidence

Brian asks the Court to reexamine the RFC limitations the ALJ drafted because he believes they are not connected to the evidence in violation of SSR 96-8p. SSR 96-8p requires an ALJ to discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, eight hours a day, for five days a week, or an equivalent work schedule). SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "But we may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if we are satisfied that the ALJ built an accurate and logical bridge from the evidence to [his] conclusion." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quotation marks omitted); *see also Whitehead v. Saul*, 841 F. App'x 976, 982-83 (7th Cir. 2020) (affirming where the ALJ derived his restrictions from two sources).

In this case, where the ALJ's RFC limitations differed from those that the state agency

---

[6] Brian has waived any argument regarding the ALJ's review of the state agency medical and psychological consultants because he did not raise and develop it in his briefs. *See Martin v. Kijakazi*, 2022 WL 1681656, at *3 (7th Cir. 2022) ("[Claimant] waived this argument by failing to raise it in his opening brief."); *see also Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (undeveloped arguments are waived).

consultants suggested, the ALJ crafted more restrictive RFC limitations.[7]  The Seventh Circuit has held that an ALJ does not err when he finds a claimant to have an RFC which is more limited than that ascribed by the medical experts. *See, e.g.*, *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) ("It was because of and not in spite of [claimant's] testimony that the ALJ limited her to a more restrictive residual functional capacity finding than any physician on the record.").  An accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *see also Karla J.B. v. Saul*, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020) ("Essentially, Plaintiff argues the ALJ erred by placing more—not fewer—restrictions on Plaintiff's RFC. Again, this is a quizzical argument.").  The state agency consultants concluded that Brian could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. (R. 96, 113-14).  After considering the evidence, the ALJ determined that Brian required a more limiting RFC.  Specifically, the ALJ found that Brian could only occasionally climb ramps and stairs, stoop, kneel, balance, crouch, and crawl. *Id*. at 40.  Likewise, the ALJ concluded that Brian "would benefit from work that does not require that he remain in any static position for more than an hour." *Id*. at 42.  In comparison, the state agency consultants opined that Brian could sit with normal breaks for six hours in an eight-hour workday—no additional breaks were needed. *Id*. at 95, 113.  Again, this accommodation was more limiting than that of any doctors that the ALJ found persuasive.  In sum, the ALJ described any areas of disagreement with the state agency consultants and provided supporting evidence when he deviated from their assessments of Brian's abilities.[8]

---

[7] The ALJ also relied on the state agency medical and psychological consultants in drafting portions of the RFC.  For example, the ALJ and the state agency consultants agreed that Brian could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. *Compare* (R. 40), *with id*. at 95, 113.

[8] The one main difference between the ALJ's conclusions and the state agency consultants' findings occurred when the ALJ concluded that Brian had no limitations in his ability to sit, stand, or walk throughout

The section of the RFC that Brian specifically takes issue with is the ALJ's conclusion that Brian "has no limitations in his ability to sit, stand, or walk throughout an 8-hour workday. The claimant needs to alternate his position between sitting, standing, and walking for no more than five minutes out of every hour. While doing so, he would not need to be off task." *See* Doc. 12 at 9 (*citing* R. 40). Brian first argues he would be unable to sustain this sit-stand limitation and that the ALJ based it on pure speculation rather than evidence in the record. *See* Doc. 12 at 9-12. Although no doctor included this restriction in their opinions, the ALJ explained how he derived this limitation. (R. 41-42). The ALJ first compared Brian's testimony to the record evidence and found that Brian's reporting of his inability to sit, stand, and walk was exaggerated. *Id*. at 41. In this context, Brian asks the Court to consider his testimony and his wife's Function Report, but the ALJ already evaluated this evidence and found it not persuasive or not supported by the record evidence. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review.").

Furthermore, regarding Brian's ability to sit, the ALJ concluded that he "did not find the claimant had reported experiencing symptoms of such severity when sitting [to] any care provider." (R. 41). The ALJ explained that no medical records noted Brian's inability to sit properly in a chair, and abnormal station was never documented. *Id*. The ALJ also pointed out

---

an eight-hour workday and that Brian was limited to light work. *See* (R. 40-41). Because Brian did not raise this argument in his briefs, it is waived. *See Martin*, 2022 WL 1681656, at *3 ("[Claimant] waived this argument by failing to raise it in his opening brief."); *see also Schomas*, 732 F.3d at 708 (undeveloped arguments are waived). Even if it were not waived, this distinction is not consequential because light work only involves sitting or standing for six hours a day, which the state agency consultants agreed Brian could accomplish. *See Clifford*, 227 F.3d at 869 n. 2 (explaining "light work" is generally characterized as "standing or walking, off and on, for six hours during an eight-hour workday") (*citing* 20 C.F.R. § 404.1567(b); SSR 83–10). Indeed, the VE testified that the two jobs the ALJ selected at step five, storage rental clerk and marker, were light work jobs that Brian could perform. *See* (R.84). As a result, the ALJ's limitation to light work resolves any potential concern here.

that during Brian's appointment with an anesthesiologist in March 2020, there was no documentation that he had difficulty sitting. *Id.* at 35. Additionally, the state agency consultants opined that Brian could sit with normal breaks for about six hours in an eight-hour workday. *Id.* at 95, 113. As a result, the ALJ considered the record evidence and relied on the state agency consultants' opinions that Brian could sit for the duration required for light work. The cases Brian relies on are inapposite because, in *Scott v. Astrue*, the court explained that the ALJ's assessment was not based on any medical evidence that the claimant could stand for six hours. 647 F.3d 734, 740 (7th Cir. 2011). Likewise, in *Tamara T. v. Kijakazi*, the court stated that the ALJ's finding that the claimant "could walk fifty feet unassisted does not provide substantial evidence in support of a determination that Plaintiff work at the light level." 2021 WL 5163298, at *3 (N.D. Ill. Nov. 5, 2021). In contrast, here, the state agency consultants opined that Brian could sit, stand, and walk for six hours. (R. 95, 113). As a result, the state agency consultants' findings substantiated the ALJ's conclusions, unlike the cases Brian relies on where substantial evidence was missing to support the ALJ's conclusions.

Nevertheless, Brian contends that the ALJ rejected his alleged limitations in sitting by relying on his lack of "abnormal station." *See* Doc. 12 at 10. According to Brian, station can only relate to standing, not sitting, so the ALJ's conclusion was improper. *Id.* However, courts nationwide have affirmed ALJ decisions where sitting stations were normal. *See, e.g.*, *Hanks v. Berryhill*, 2017 WL 1047377, at *5 (E.D. Mo. Mar. 20, 2017) ("She had normal station when sitting."); *Henderson v. Astrue*, 2013 WL 423013, at *7 (S.D. Ohio Feb. 4, 2013) ("Likewise, Dr. Richard Sheridan examined Plaintiff on April 12, 2007 in connection with her worker's compensation claim and found 'sitting and standing stations are normal'"). Ultimately, the Court does not need to parse the definition of standing because the ALJ identified other reasons to support

his conclusion. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as enough of them are").

Concerning Brian's ability to walk and stand, the ALJ compared his medical records to his testimony and personal statements. In one medical record, a physician observed that Brian "was able to walk 50 feet without support and did not require an assistive device." *Id*. at 34. There, Brian could walk with tandem gate, on his toes, and on his heels. *Id*. Brian also "had no difficulty getting on and off the examination table." *Id*. The ALJ contrasted this to Brian's statements at a pain management clinic, where he reported difficulty walking and rising from a seated position. *Id*. The ALJ also discussed Brian's testimony that "he could not walk more than half a block before the pain forced him to turn around." *Id*. at 41. Going further, the state agency consultants opined that Brian could stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday. *Id*. at 95, 113. In sum, the ALJ reviewed the record evidence and found the medical records and state agency consultants' opinions more persuasive than Brian's testimony.

Regarding Brian's ability to stay on task while alternating positions, the ALJ again considered the relevant record evidence. The ALJ stated that "[i]n order that he not be off task while alternating position, he requires jobs that either allow the option of sitting or standing while at the workstation, or which include alternative posture tasks, such as a job that is predominantly performed while seated, but every hour the employee could walk across the office to make copies." (R. 42). Indeed, no medical expert opined that Brian required additional off-task time. Instead, Brian's brief relies on evidence that he believes the ALJ overlooked, but the ALJ was not required to list everything he considered. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[A]n ALJ is not required to list each document he considered, but must only weigh the relevant evidence."). Much of the medical evidence that Brian relies on was already evaluated and weighed

18

by the ALJ. *See* Doc. 12 at 10-12; Doc. 17 at 7. In particular, the ALJ discussed Brian's records of abdominal tenderness, thoracic and lumbar tenderness, straight leg raising, and tandem gait walking or abnormality. (R. 34, 41-42). Brian concluded that his pain would make it difficult to remain on task. *See* Doc. 12 at 12. But this is Brian's conclusion, not a medical expert's opinion. Rather the ALJ, based on his weighing of the record evidence, concluded that Brian would not need to be off task while alternating positions and acknowledged that Brian requires specific jobs to facilitate this RFC.[9] In the end, Brian invites the Court to reconsider the facts and evidence that the ALJ already grappled with, but the Court may not do so. *Reynolds*, 25 F.4th at 473.

The ALJ also previewed the proposed limitation during the telephone hearing with the VE and then, in his opinion, described why he drafted the sit-stand limitation at issue. At the hearing, the ALJ examined VE Hennessy about Brian's ability to complete his past work and possible future work, given various limitations. (R. 81-85). There, the ALJ stated that he would "give a great benefit of the doubt and I'll say that this individual needs to alternate his position for no more than five minutes out of every hour." *Id.* at 82. The VE responded that under the ALJ's proposed sit-stand limitations, there were jobs that Brian could still perform. *Id.* at 84. An ALJ may give a claimant the benefit of the doubt in assessing their symptoms and formulating their RFC limitations. *See Cleveland v. Colvin*, 2016 WL 704832, at *12 (N.D. Ill. Feb. 23, 2016) (affirming where "the ALJ gave Plaintiff the benefit of the doubt as to at least some of her stated symptoms in formulating a mental RFC"). Additionally, in the ALJ opinion, the ALJ clearly articulated why the sit-stand limitation was appropriate:

---

[9] Brian relies on *Sheila H. v. Saul* to assert that the ALJ relied on insufficient evidence to substantiate his RFC limitations. 2021 WL 54025, at *2-3 (N.D. Ill. Jan. 6, 2021). However, *Sheila H.* is inapplicable because there the Commissioner conceded that the ALJ failed to articulate a basis for the RFC finding, and the court recognized the lack of opinion evidence and minimal discussion of treatment records. *Id.* In this case, the ALJ sufficiently considered the supporting and contrary treatment records, the state agency consultants provided a persuasive opinion, and the Commissioner made no comparable concession.

> The record establishes that the claimant would benefit from work that does not require that he remain in any static position for more than an hour. This reflects the relatively limited medical findings of the record, as well as the claimant's presentation at the hearing. In order that he not be off task while alternating position, he requires jobs that either allow the option of sitting or standing while at the workstation, or which include alternative posture tasks, such as a job that is predominantly performed while seated, but every hour the employee could walk across the office to make copies.

*Id*. at 42.[10]  As a result, the ALJ explained that he considered the record, Brian's testimony, and the types of jobs that would allow the selected limitation.  Ultimately, Brian bore the burden of establishing that he required a greater sit-stand limitation with more off-task time. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) (claimant offered no evidence that "necessitated additional functional restrictions beyond those already incorporated in the RFC").  But even though he failed to meet this burden, the ALJ included a more restrictive accommodation than the state agency consultants proposed. *See Burmester*, 920 F.3d at 510.  Based on this record, the ALJ's RFC was evidence that the ALJ credited some of Brian's allegations and fully considered the evidence.  Thus, the ALJ supported the RFC with more than a mere scintilla of evidence. *Biestek*, 139 S.Ct. at 1154.

Lastly, Brian alleges that although the ALJ concluded that Brian's migraines were a severe impairment, the ALJ did not account for symptoms and limitations related to the migraines. *See* Doc. 12 at 13-14.  Courts in this district have concluded that "a finding that an impairment is severe cannot square with a conclusion that it imposes no limitations." *Desiree B. v. Saul*, 2019 WL 6130814, at *3 (N.D. Ill. Nov. 19, 2019) (*quoting Pickens v. Berryhill*, 2019 WL 1219707, at *2 (E.D. Ark. Mar. 15, 2019)); *cf. Herren v. Saul*, 2021 WL 1192394, at *3 (E.D. Wis. Mar. 30, 2021)

---

[10] Here, the ALJ mentioned "claimant's presentation at the hearing," but the hearing occurred by telephone. (R. 42, 52-86).  As a result, the ALJ could hear Brian testify but could not see him.  The ALJ's reliance on his "presentation" could be based on his speech and interaction in response to the ALJ's questions. Nevertheless, even if there was error, it was harmless because the ALJ supported his conclusion with ample evidence in the record and expert medical opinions that the Court can rely on.

("The prevailing rule, however, is that an ALJ does not err solely because he finds an impairment severe at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC.") (cleaned up). But this is not a case where the ALJ ignored his symptoms and imposed no limitations. Here, the ALJ described Brian's history of migraine headaches and how they were controlled after he started prescription medication. (R. 37-39). According to the ALJ, the twenty-year history of Brian's migraine headaches demonstrated the fluctuating nature of his symptoms. *Id.* However, the long-term condition also indicated that Brian was able to work during periods when he experienced migraines. *Id.* at 205 (work at substantial and gainful levels from 2001 to 2015). After reviewing the evidence, the ALJ drafted postural and environmental limitations to address the possibility of Brian suffering a migraine headache in the workplace. In particular, the ALJ limited Brian "to work that required no climbing of ladders, ropes, or scaffolds." *Id.* at 42. The ALJ explained that this limitation "helped decrease the chance of injury if the claimant was to become dizzy due to . . .a migraine headache." *Id.* at 43. Thus, the ALJ explicitly accounted for the possibility of migraine headaches with adequate RFC limitations.

## C. Subjective Pain Assessment and Third-Party Function Report

Finally, Brian contends that the ALJ improperly assessed his pain and the third-party function report completed by his wife. Because the ALJ sufficiently explained and supported his subjective symptom assessment, the record does not compel reversal. In evaluating subjective allegations, an ALJ assesses the objective medical evidence and a number of other factors, including the claimant's daily activities, effectiveness and side effects of any medication, treatment, other methods to alleviate symptoms, and factors that precipitate and aggravate symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c). "As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility

determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). As the Seventh Circuit has stated, "[p]atently wrong is a high threshold—'only when the ALJ's determination lacks any explanation or support ... will [we] declare it to be 'patently wrong' and deserving of reversal.'" *Ray*, 861 F. App'x at 107 (citations omitted).

Beginning with the ALJ's analysis of Brian's pain allegations, Brian views the ALJ's review of his pain through a narrow lens to assert that the ALJ did not explore the factors under 20 C.F.R. § 404.1529(c). But "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted*, 923 F.3d at 478. Citing *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001), Brian argues that the ALJ did not evaluate his treatment history and medications in assessing his pain. *See* Doc. 12 at 14. Yet at the same time, Brian acknowledges that the ALJ noted that Brian was prescribed opioid medications, recognized that Brian received injections for his thoracic pain, and pursued physical therapy for his abdominal pain. *Id.* Throughout the ALJ's opinion, the ALJ described when Brian completed MRI studies of his spine, received phenol injections for his left side chest and abdominal pain, completed pain management clinic treatment, and used CBD oil for his pain. (R. 33-35, 42).[11] In the end, the ALJ concluded that Brian's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 41). In arriving at that conclusion, the ALJ analyzed Brian's

---

[11] The ALJ noted that "[t]here was little documented evidence of treatment specifically for the claimant's spine-related complaints, other than recurrent pain-management appointments that are discussed below. The record did not show the claimant was referred to a neurosurgeon, an orthopedic spine surgeon, outpatient physical therapy, or a chiropractor." *Id.* at 33. Although the ALJ did not consider why Brian did not seek more aggressive treatment, the ALJ's statement was not in error. Here, the ALJ relied on other record evidence to support his analysis of Brian's treatment and medication due to his alleged pain. *See Halsell*, 357 F. App'x at 722 ("Not all of the ALJ's reasons must be valid as long as enough of them are"); *see also Donald L. v. Saul*, 2019 WL 3318165, at *7 (N.D. Ill. July 24, 2019) ("any error in improperly considering Donald's treatment history in regard to his seizures amounts to harmless error as the medical record and Donald's testimony establishes that his seizures are well-controlled with medication.")

treatment history, which included the variable success of different medications and injections. When the ALJ's decision is read as a whole, it is clear that the ALJ considered Brian's medications, various forms of treatment, and other methods to alleviate his symptom.

Turning to the reports that Brian's wife completed, the reports are titled "Function Report-Adult-Third Party Form SSA-3380." *See* (R. 266-73, 287-95). Brian disagrees with the ALJ's finding that the reports were not persuasive. *See* Doc. 12 at 15-16. The ALJ explained that the reports were not persuasive because the limitations were "not consistent with the function-by-function analysis used by the Social Security Administration," and the treatment evidence did not support the severity of the limitations. (R. 43-44). Although the ALJ found the reports not persuasive, the ALJ explained that he still considered them when determining the RFC. *Id.* at 44.

Here, the ALJ's first reason for discounting Brian's wife's function reports falls short. "Observations of lay witnesses may be submitted in written form by using the Third Party Function Report (Form SSA-3380), a sworn affidavit, an informal statement such as a letter to the judge, or by deposition. It may also be presented as oral testimony at the hearing." § 26:11. Format of observational evidence of lay witnesses, 3 Soc. Sec. Disab. Claims Prac. & Proc. § 26:11 (2nd ed.). There is no requirement in the Social Security Regulations that a spouse must complete a function-by-function analysis that is consistent with the Social Security Administration. Nor does the Acting Commissioner provide evidence that this is the case. Going further, the Seventh Circuit has concluded that an ALJ is not required to articulate a function-by-function analysis. *See Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) ("We join our sister courts, however, in concluding that a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not necessarily require remand."); *see also Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) ("Although the RFC assessment is a function-by-function assessment, the

expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient.") (cleaned up).  Likewise, a treating physician is not required to complete a function-by-function analysis. *See, e.g.*, *James P. v. Kijakazi*, 2022 WL 1908892, at *5 (N.D. Ill. June 3, 2022) ("It is well-established that a treating physician is not required to provide a function-by-function analysis or explanation of what a claimant can do.") (cleaned up).  Given this, it is implausible to conclude that a claimant's spouse would be required to complete a function-by-function analysis when the main players in a Social Security disability matter are not required to do so.  Accordingly, the ALJ improperly concluded that Brian's wife was required to comply with the Social Security Administration's function-by-function requirements when the ALJ discounted those function reports.

However, the ALJ's second reason for discounting Brian's wife's function reports was sufficient.  The ALJ explained that the objective medical evidence did not support the severity of the limitations she identified. (R. 44).  The fact that Brian's statements supported his wife's reports does not resolve the issue because the ALJ found Brian's statements concerning the severity of his symptoms unsupported by the record. (R. 41).  Additionally, the ALJ considered Brian's wife's function reports in his opinion.  For example, the ALJ recognized that Brian's wife reported that Brian "needed help performing his personal care and hygiene activities." *Id*. at 31.  But the ALJ was not required to include limitations that were not supported by the record. *See Reynolds*, 25 F.4th at 473 ("Crucially, however, an ALJ need only include limitations that are supported by the medical record.").  Rather, as the Court has already explained, the ALJ relied on the state agency consultants' opinions, which were less restrictive and severe than the limitations Brian's wife listed. *See supra* at 13-17; *see also Joseph M. v. Saul*, 2019 WL 6918281, at *15 (N.D. Ill. Dec. 19, 2019) (affirming where the ALJ would have found the claimant's sister's report

inconsistent with the treatment record "given the ALJ's decision to rely upon medical evidence—namely, the opinions of the non-examining state agency consultants—to assess these abilities."). Ultimately, the ALJ provided two reasons for discounting Brian's wife's function reports, one of which is persuasive and provides sufficient evidence to support the ALJ's conclusion. Thus, the ALJ's subjective symptom evaluation was not "patently wrong." *See, e.g., Lopez v. Astrue*, 807 F. Supp. 2d 750, 760 (N.D. Ill. 2011) ("The credibility determination need not be flawless....").

## **CONCLUSION**

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied [12], the Acting Commissioner's Motion for Summary Judgment [16] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: July 17, 2023

_____
Sunil R. Harjani
United States Magistrate Judge